IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA D. BELLIDO-BENEJAN<br><br>Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>Defendant | CRIM. NO.: 19-1994 (SCC) |

**OPINION & ORDER**

Plaintiff Maria D. Bellido-Benejan ("Plaintiff") filed this
suit seeking to vacate the Commissioner of Social Security's
(the "Commissioner") decision denying her disability
benefits. Docket No. 1. The Government answered the
complaint, arguing that the Commissioner's decision should
be affirmed, as it was supported by substantial evidence.
Docket No. 10 at 2. Plaintiff later filed a memorandum of law
to support her position that the Commissioner's decision
should be vacated. Docket No. 21. The Government also filed
a memorandum of law replying to Plaintiff's arguments.

Docket No. 23. After reviewing the record and the parties'
memoranda, we affirm the Commissioner's decision.

## I.    Standard of review

Under the Social Security Act (the "Act"), a person is
disabled if "his physical or mental impairment or
impairments are of such severity that he is not only unable to
do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy
. . . ." 42 U.S.C. § 423(d). The Act provides that "[t]he findings
of the Commissioner . . . as to any fact, if supported by
substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).
Substantial evidence exists "if a reasonable mind, reviewing
the evidence in the record, could accept it as adequate to
support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health &
Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the
Commissioner's decision must be upheld if we determine that
substantial evidence supports the Administrative Law
Judge's ("ALJ") findings, even if we would have reached a

different conclusion had we reviewed the evidence *de novo*. *Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and found facts upon the proper quantum of evidence. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citing *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996)). The ALJ's decision must be reversed if its decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Id.* In reviewing a denial of benefits, the ALJ must consider all the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See id.* at § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If he is, he is not disabled

under the Act. *Id.* Step two determines whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. *Id.* at § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. *Id.* at § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. *Id.* at § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. *Id.* at § 404.1520(a)(4), (e). Once the RFC is determined, the inquiry proceeds to step four, which compares the plaintiff's RFC to his past relevant work. *Id.* at § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." *Id.* at §

404.1520(a)(4)(v). If the plaintiff can adjust to other work, he
is not disabled; if he cannot, he is disabled. *Id.*

## II.   Background

Plaintiff made an initial application for disability benefits
on February 5, 2016, alleging that her disability began on
August 8, 2014. Tr. 25.[1] She later amended her onset disability
date to March 5, 2016. Tr. 524-525. Her application was
initially denied, as was the reconsideration, and she
consequently requested an ALJ hearing. Tr. 64-70. The
hearing was held on October 10, 2018. Tr. 41. The ALJ found
that Plaintiff had severe impairments including major
depressive disorder, osteoarthritis, lumbosacral spine and
cervical spondylosis. Tr. 27. In the determination of Plaintiff's
RFC, the ALJ determined that she could perform "light work"
under 20 C.F.R. § 404.1567(b) with some limitations.[2] Tr. 29.

---

[1] Throughout this Opinion & Order, the Social Security record Transcript
will be referred to as Tr.

[2] Specifically, the ALJ concluded that Plaintiff could "never climb ladders,
ropes, or scaffolds, balance frequently, stoop frequently, kneel

However, the ALJ clarified that she could climb ramps and stairs frequently. *Id.* The ALJ also concluded that Plaintiff had mental limitations but could perform simple routine tasks and make simple work-related decisions. *Id.* Accordingly, the ALJ concluded that Plaintiff's RFC allowed her to perform her past relevant work as an Inspector. Tr. 32-33.

Plaintiff appealed the ALJ's decision with the Social Security Administration ("SSA") Appeals Council ("Appeals Council") and received an unfavorable decision. Tr. 1-3. Subsequently, Plaintiff filed this case under 42 U.S.C. § 405(g), seeking to review the ALJ's decision. Docket No. 1.

### III.   Analysis

On appeal, Plaintiff raises five issues with the ALJ's decision: first, that the ALJ erred by finding that she was able to perform her past relevant work, Docket No. 21 at 11-15;

---

occasionally, crouch occasionally, and crawl occasionally." Tr. 29. The ALJ also concluded that Plaintiff could work at unprotected heights occasionally, move mechanical parts frequently, and operate a motor vehicle frequently. *Id.*

second, that the ALJ erred by substituting the opinion of a medical expert with his own opinion, *id.* at 15-17; third, that the ALJ did not provide a function-by-function assessment of her mental RFC, *id.* at 17-20; fourth, that the ALJ erred by posing an insufficient question to the vocational expert, *id.* at 20-22; and fifth, that the ALJ erred by not concluding that Plaintiff was disabled in accordance with the Medical-Vocational Guidelines, *id.* at 22. We address each issue in turn.

   1. *Past relevant work*

   Plaintiff first argues that the ALJ erred in determining her RFC assessment and in finding that she could perform her past relevant job. *Id.* at 11. According to Plaintiff, the administrative record supports four additional limitations at work. *Id.* at 12. Specifically, that she: needs to sit or stand (shift positions); spend more than ten percent of the time off task; only sit or stand for two hours in an eight-hour workday; and only do sedentary work instead of light work. *Id.* Plaintiff contends that the record supports at least one if not all four of these accommodations. *Id.* We disagree.

Plaintiff's arguments require us to examine the totality of the ALJ's RFC determination and the evidence used. Starting with the non-medical evidence, the ALJ noted that Plaintiff reported physical and mental impairments. Tr. 30. The ALJ explained that Plaintiff informed that she was "unable to lift objects, bend, kneel, stand, walk, sit, climb ladders and remembering." *Id.* Plaintiff's daughter, Jackeline Bonilla, reported that her mother had such limitations. *See* Tr. 543. She also added that Plaintiff had problems falling asleep, dressing, bathing, managing funds, performing house chores, and taking medications. Tr. 539-541. Despite Plaintiff's claims, the ALJ found that Plaintiff had stated in a Social Security form that she was able to watch television, go shopping, and lift light objects. Tr. 551. It also found that Plaintiff's medically-determinable impairments could reasonably be expected to cause her alleged symptoms but not the alleged intensity, persistence and limiting effects, as the medical evidence reflected otherwise. Tr. 30. The ALJ then examined the medical evidence.

Regarding Plaintiff's physical RFC, the ALJ determined that Plaintiff had a medical history of back and cervical pain that supported her allegations of pain. *Id.* However, the ALJ found that the medical evidence did not support her alleged severity or degree of related limitations. *Id.* In making this finding, the ALJ first considered an x-ray examination of Plaintiff's cervical and lumbar spine. *Id.* The x-ray report revealed that Plaintiff's cervical spine had degenerative spondylosis and straightening of the spine. Tr. 740. Despite this finding, the x-ray report pointed out that Plaintiff had normal intervertebral spaces. *Id.* The report also revealed that Plaintiff's lumbar spine had degenerative spondylosis, but no fracture or a dislocation. *Id.* It also revealed adequate bone density and normal intervertebral spaces. *Id.*

Regarding Plaintiff's right knee, the ALJ considered an x-ray consultation report. Tr. 31. The report showed that there was osteophytosis of the patella. Tr. 773. The ALJ noted, however, that the report mentioned that there was minimal loss of the patellar cartilage, and that there was no fracture or

dislocations identified. Tr. 31; *see* Tr. 773. Moreover, the report found that the soft tissue was within normal limits. Tr. 773. Additionally, the ALJ examined a densitometry test, which revealed normal findings. Tr. 776.

The ALJ also considered a physical consultative examination performed by Dr. Iturrino Pagán. Tr. 31. In the report, Plaintiff claimed that she could not work due to her depressive disorder and that she was unable to retain information. Tr. 726. Plaintiff also reported that she had cervical and lumbar spasms which limited her ability to sit, stand, and walk for long periods of time. *Id.* Dr. Iturrino Pagán found that there was no evidence of joint enlargement, effusion, or signs of joint inflammation, hand joint pain, and no evidence of swelling or stiffness. Tr. 731. Dr. Iturrino Pagán also found that there was no anatomical deformity in any major joints, that Plaintiff had intact passive and active range of motion of all extremities, *id.*, and that her muscular strength was five out of five, *id.* at 734.

The ALJ relied also on progress notes from Dr. Almodóvar Mercado to indicate that Plaintiff had full range of motion of the neck without pain. Tr. 31; *see* Tr. 828. The ALJ also relied on a medical record to find that Plaintiff had no edemas or deformities. Tr. 31; Tr. 902. The ALJ's decision found important the fact that there was little evidence of medical treatment for Plaintiff's musculoskeletal conditions. Tr. 31.

Turning to Plaintiff's mental RFC, the ALJ clarified that Plaintiff was "diagnosed with major depressive disorder, recurrent severe with psychotic features." *Id.* The ALJ relied on certain progress notes from the American Psych. System Clinics to state that Plaintiff's psychomotor activity was adequate. *Id.*; *see* Tr. 651. The progress notes reflect that Plaintiff "reported improvement of her symptoms, except for occasional sadness." Tr. 785. However, her mood was described as euthymic. Tr. 786. The notes inform that her memory, concentration, judgement, and insight were adequate. Tr. 787. Plaintiff's last treatment note shows that

she had depressive symptoms and diminished concentration and insight. Tr. 838. It also showed that Plaintiff's judgment was adequate, *id.*, and that there were no suicidal ideations. Tr. 837. The ALJ noted that the record did "not contain any evidence of in-patient hospitalizations for psychiatric issues," nor evidence of "any emergency treatment for anxiety or depression." Tr. 32. Finally, the progress notes state that Plaintiff was stable and that she had no side effects from her medications. Tr. 645.

In addition to the progress notes, the ALJ used a psychological consultative examination performed by Dr. Pagán to determine Plaintiff's mental RFC. Tr. 32. The reports states that Plaintiff had no history of psychiatric hospitalizations. Tr. 747. Dr. Pagán's report notes that during the examination Plaintiff had good hygiene, that she was oriented in person and place but not in time. Tr. 748. It also mentions that Plaintiff had no suicidal attempts or hallucinations. Tr. 749. Regarding Plaintiff's cognitive abilities, the report states that she had diminished

concentration and her immediate memory had deteriorated.
*Id.* The report describes Plaintiff's mood as sad but
cooperative. Tr. 750. In addition, the report states that Plaintiff
had adequate judgement. *Id.* Importantly, the report points
out that Plaintiff did not put too much effort into the
examination and that she intentionally amplified her physical
pain behavior at the time of her assessment. Tr. 751.

Finally, the ALJ considered two state agency medical
consultants' opinions regarding Plaintiff's physical RFC.[3] Tr.
32. The two doctors prepared two separate reports. *See id.* at
314-333, 336-346. Both doctors concluded that Plaintiff was
limited to lifting and carrying twenty pounds occasionally
and ten pounds frequently. Tr. 328, 345. They also found that
Plaintiff could sit for six hours and stand or walk six hours
total in an eight-hour workday. *Id.* The ALJ gave significant
weight to both consultants' opinions, as they were consistent
with its finding that Plaintiff had the RFC to do light work.

---

[3] The doctors that prepared the reports were Dr. Brenda Concepción, Tr.
333, and Dr. Ramon Ruiz Alonso, Tr. 346.

Tr. 32.

Plaintiff challenges the ALJ's RFC determination by stating that the ALJ did not consider the totality of the medical evidence regarding her musculoskeletal conditions. Docket No. 21 at 13-14. Plaintiff alleges that the ALJ did not consider two MRIs and two x-rays. *Id.* The first MRI reveals broad disc protrusion in the lumbar spine, Tr. 602, and the other reveals mild disc desiccation and spasm in the cervical disc, Tr. 599. The x-ray of the knee shows calcific tendonitis of the patella and degenerative osteoarthritis. Tr. 604. The x-ray of the cervical spine showed calcification of the anterior longitudinal ligament at C5-C6 and C7-T1, with left foraminal narrowing and osteophytes at C4-C5 level. Tr. 603.

However, this evidence does not establish that Plaintiff is disabled, as it is consistent with the ALJ's RFC findings. The ALJ acknowledged that Plaintiff had a medical history of back and cervical pain. Tr. 30. Specifically, Plaintiff had degenerative spondylosis and straightening of the spine. Tr. 30-31. It found, however, that Plaintiff had normal

intervertebral spaces, no fracture and dislocation, and adequate bone density. Tr. 31. Regarding Plaintiff's knee, the ALJ concluded that she had patellar osteoarthritis. *Id.* Nevertheless, the ALJ noted overall normal findings. *Id.* Finally, the ALJ concluded that there was very little evidence of treatment for the musculoskeletal conditions. *Id.*

As demonstrated above, the ALJ's RFC determination is supported by substantial evidence and thus conclusive. The ALJ properly considered all the relevant medical and non-medical evidence on the record. Our review of the ALJ's decision is limited to determining whether the findings in the final decision are supported by substantial evidence and whether the ALJ applied the correct legal standards. Accordingly, the ALJ did not err in determining Plaintiff's RFC.

2.   *Medical expert opinion*

Plaintiff next argues that the ALJ applied the wrong legal standard by not securing the testimony of a qualified medical expert to support its conclusions. Docket No. 21 at 15. Plaintiff

contends that the ALJ is a layperson and thus should not have interpreted the raw medical data in the record without a qualified medical source. *Id.* at 17. Plaintiff's argument does not specify if the ALJ failed to secure a medical opinion at all or just as to a specific part of the RFC.

Regardless, we clarify that the idea that an ALJ always needs the opinion of a "super-evaluator," a single physician that determines a claimant's RFC is not supported by the social security "statutory scheme, by the caselaw, or by common sense." *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). The regulations mandate that it is the ALJ's responsibility to determine a claimant's RFC. 20 C.F.R. § 404.1546(c). To make this determination, the ALJ uses all relevant medical and non-medical evidence in the record. 20 C.F.R. § 404.1545(a)(3). The ALJ considers medical opinions to assess a claimant's RFC but it nonetheless has the final responsibility in deciding a claimant's RFC. 20 C.F.R. § 404.1527(d)(2). In this assessment the ALJ is permitted "to piece together the relevant medical

facts from the findings and opinions of multiple physicians."
*Krol v. Berryhill*, Civil Action No. 15-13533-GAO, 2017 WL
1196644 at *3 (D. Mass. March 29, 2017) (quoting *Evangelista*,
826 F.2d at 144).

Plaintiff cites to *Pérez v. Sec'y of Health and Human Servs.*,
958 F.2d 445, 446 (1st Cir. 1991) to support her argument that
an ALJ is a layperson and cannot interpret raw medical data.
Docket No. 21 at 16. In *Pérez v. Sec'y of Health and Human
Servs.*, the First Circuit noted that an ALJ is not qualified to
interpretate raw medical data in functional terms. 958 F.2d
445, 446 (1st Cir. 1991) (finding that an ALJ's determination of
a claimant's physical RFC was supported by substantial
evidence even though the record did not contain a medical
evaluation of the claimant's RFC). This rule was established
in *Berrios v. Sec'y of Health and Human Servs.*, 796 F.2d 574, 576
(1st Cir. 1986). *Langley v. Astrue*, 777 F. Supp.2d 1250, 1253
(N.D. Al. 2011). The First Circuit has developed the *Berrios*
rule to mean that an ALJ, a layperson, cannot interpret raw
and complex medical data without the opinion of a medical

expert. *Id.* at 1256. For example, in *Manso-Pizarro*, the First Circuit held that the ALJ erred by not securing a medical opinion to determine a claimant's RFC where the medical evidence was complex and required more than a layperson's effort at a commonsense functional capacity assessment. 76 F.3d at 20. That is not the case here.

As assessed above, the evidence used by the ALJ to determine Plaintiff's mental RFC is clear and presents straightforward findings that a layperson can understand, as distinguished from the interpretation of esoteric raw medical data. In any case, the ALJ relied on two medical opinions to determine Plaintiff's physical RFC and exertional capacity. Tr. 31-32. Thus, it is clear that the ALJ in fact used medical opinions to support Plaintiff's RFC. Also, the ALJ relied on Dr. Pagán's report and the treatment notes to piece together Plaintiff's mental RFC. *See Krol v. Berryhill*, 2017 WL at *3.

### 3. *Mental RFC*

Plaintiff also argues that "the ALJ failed to provide a function-by-function assessment of [her] mental limitations

[and] provide appropriate rationale with reference to the evidence of the record in support of the assessed limitations." Docket No. 21 at 17. Plaintiff also states that, due to her mental and emotional impairments, the ALJ had an obligation in determining her mental RFC to asses: (1) her ability to cope with the demands of different work environments, regardless of the skill level involved or how much time she could sit; (2) her ability to respond appropriately to a normal work environment or deal with the changes and everyday challenges in a routine work setting or environment; and (3) if she could be punctual, attend work regularly, accept supervision, or remain in the workplace the entire day. *Id.* at 18.

The ALJ concluded that Plaintiff had a mental limitation and that she could perform simple routine tasks and work-related decisions. Tr. 29. We have already ruled that the ALJ's mental RFC finding is supported by substantial evidence. Plaintiff has not pointed to additional evidence regarding this alleged error by the ALJ that supports changing this finding

or stated any other ground that warrants reversal. Moreover, Plaintiff fails to cite the legal basis for this supposed obligation of the ALJ. Therefore, Plaintiff has not shown that the ALJ erred in determining her mental RFC.

### 4. *Hypothetical question to vocational expert*

As to the fourth alleged error by the ALJ, Plaintiff contends "that the hypothetical question posed by the ALJ to the vocational expert, did not include or sufficiently consider, [her] limitations regarding concentration, persistence, and pace." Docket No. 21 at 20. In essence, Plaintiff alleges that limitations more severe than those found by the ALJ should have been proffered in the ALJ's hypotheticals. *See id*. 20-21. But because we find the ALJ's RFC decision is supported by substantial evidence, and because we find the hypotheticals posed by the ALJ consistent with its RFC determination, we think that the questions asked to the ALJ were proper.

### 5. *Medical-Vocational Guidelines*

Plaintiff's final argument is also dismissed. She contends that when the additional physical limitations discussed

above—the need to sit or stand (shift positions), the need to spend more than ten percent of the time off task, the ability to sit or stand for only two hours in an eight-hour workday, and the ability to do only sedentary work instead of light work— are considered as part of her RFC, a finding of disabled is mandated under Medical-Vocational Guidelines 202.00(c), 202.04, and 202.09.[4] *Id.* at 22. But, as we have ruled *supra*, The ALJ's RFC determination did not warrant any additional findings of limitations. Accordingly, the ALJ did not err in finding that Plaintiff is not disabled under Medical-Vocational Guidelines 202.00(c), 202.04, and 202.09.

---

[4] Plaintiff contends that she qualifies for a finding of disability under the Medical-Vocational Guidelines cited above, given that she is of advanced age, her past work is unskilled, and she cannot communicate in English. Docket No. 21 at 13.

## IV.    Conclusion

For the reasons explained above, the Commissioner's decision is *affirmed*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of September 2021.


S/SILVIA CARRENO-COLL
UNITED STATES DISTRICT COURT JUDGE